## No. 29,700.

THE FINANCE CORPORATION OF AMERICA, *Appellant,*
v. W. H. WALPOLE, *Appellee.*

(295 Pac. 643.)

Opinion filed February 7, 1931.

*B. F. Alford, R. L. NeSmith* and *William Histed,* all of Wichita, for the appellant.

*J. R. Mayall* and *O. W. Helsel,* both of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action in replevin for possession of an automobile or its value in money.

Plaintiff's claim of ownership was based on an assignment of a conditional sales contract which the original vendor of the car had received from its ostensible purchaser. That vendor was the Au-

burn-Kansas Distributing Company, of Wichita. The ostensible purchaser was Ross Conklin, a salesman of that company.

It appears that the Wichita company's method of dealing with its salesmen was about as follows: The salesman would go through the form of signing a note and executing a conditional sales contract for a specified price for the car which was considerably less than the price which regular customers had to pay. In this case the nominal price to the salesman was $886.20, while the price to an ordinary customer would have been $1,270.45. Whether the salesman who effected a sale to an ordinary customer would receive all this considerable difference as his commission does not appear. Probably not, but his commission was allowed out of it. If no sale was effected by the salesman within a certain time the car had to be returned, reconditioned and replaced on the floor of the dealer's showroom for sale. Where a sale was effected to an ordinary customer who could not pay the cash price in full, the paper mechanics of the transaction was handled in much the same way as to a salesman. The customer would give his note for the unpaid portion of the purchase price and execute a conditional sales contract which authorized the dealer to repossess himself of the car if the stipulated payments on the note were not forthcoming in accordance with its agreed terms.

The plaintiff is a corporation having its headquarters in Philadelphia. Its business is the supplying of funds to automobile dealers. It buys notes given by automobile purchasers and takes assignments of the conditional sales contracts incidental thereto. Where the note and sales contract is merely colorable, as where given by a salesman, the plaintiff company does not in fact buy the note and sales contract from the dealer, but it does advance him money on the transaction, regarding the sum advanced as a mere loan.

On June 1, 1929, Ross Conklin entered the employment of the Auburn-Kansas Distributing Company as a salesman. On June 7 he executed a note to that company for $886.20 and likewise executed to it a conditional sales contract for the ostensible purchase of the automobile which is the subject of this lawsuit. The conditional sales contract was assigned to the plaintiff, and it and the note and a draft for $796.67 drawn on the plaintiff were approved as to form by a Wichita representative of the plaintiff company.

The draft with the note and contract were then cashed by a Wichita bank on June 10, 1929, and accepted by the plaintiff on June 15, 1929, in Philadelphia. The automobile, however, had been turned back to the Wichita dealer, the Auburn-Kansas Distributing Company, by Conklin, the salesman, within a day or two after he signed the note and conditional sales contract. He testified:

"My agreement with the company was, when I entered their employ, that we were to drive the demonstrators not to exceed ninety days. The car was to be turned in and resold by their salesmen or the company. They had a special finance plan for demonstrators. It is the same as the retail plan with the exception of the notes. . . . I turned this car back to the company at Mr. Corrigan's request, and my own agreement. . . . Mr. Corrigan, one of the officials of the company, he said for me to turn the car in the next day. . . . Mr. Corrigan asked me to turn the car in, and, as he termed it, have it 'slicked' up so it could be sold. I also, under the terms of the instrument I signed, knew that they could demand it any time they wanted it if I was in default of my contract or they felt themselves insecure. . . . Personally I never made any payments on the car."

On June 10, 1929, three days after the execution of the note and contract by Conklin, and upon his return of the car at his employer's direction, it was sold to a Doctor Goheen and later repossessed by the dealer; and on August 4, 1929, it was sold to John Keevan and repossessed from him about September 9, 1929. The automobile was then traded by the dealer, Auburn-Kansas Distributing Company, to Walpole, the appellee. He gave in exchange for it a Buick brougham worth about $750 and his promissory note for $418. The Buick car was covered by a chattel mortgage for $244 and the Auburn dealer assumed its payment. The Auburn-Kansas Distributing Company went into bankruptcy about October 3, 1929.

Plaintiff brought this replevin action based upon the Conklin note and conditional sales contract of June 7, 1929, which had been assigned to it. The conditional sales contract had been recorded by the Auburn-Kansas Distributing Company on June 10, 1929; but the assignment was not made to the plaintiff until June 19, 1929, and never recorded.

Defendant set up various defenses, including the extinguishment of the lien by the repossession of the car under the express terms of the conditional sales contract; that the recorded contract gave the dealer the right to repossess it and to resell it, and that he had a right to buy it from the original dealer. Another defense was that promptly on the day when the note and sales contract came into

the hands of the plaintiff in Philadelphia, with the draft attached, which it had paid on June 19, 1929, plaintiff advised the dealer that the transaction must be regarded as a mere loan and that the responsibility for enforcing collection of the note and of the right to repossess the automobile for default of payment would rest on the dealer and not on the plaintiff. The letter reads:

"Deal Division.         June 19, 1929.

"AUBURN, KANS., DISTRIBUTING CO., . . . WICHITA, KANSAS.

"Purchaser—Ross Conklin.

"DEAR SIRS—We are to-day in receipt of the note of the above purchaser which has been indorsed by you. As we believe you understand, your indorsement has been required in this transaction, as it is one which does not pass the requirements of our insurance carriers. In the event the purchaser fails to pay his note we will look directly to you for full payment of the balance due. Our collection division will be glad to coöperate with you in making collections, but it is understood that any repossession action which you may consider necessary must be taken at your direction and expense. You will understand that as this deal has not passed the requirements of our insurance carriers, it is carried by us as an indorsed deal without conversion or confiscation insurance, and you are, therefore, not protected by such coverages.      Very truly yours,    FINANCE CORPORATION OF AMERICA.

"E. M. PERKS, *Deal Division.*"

Jury trial; verdict for defendant; judgment accordingly. Special findings were made, some of which were set aside by the court. Others read:

"3. Did the Auburn-Kansas Distributing Company repossess the car in question from Doctor Goheen? A. Yes.

"4. If you find that the said company did repossess the car from Doctor Goheen, did they repossess it under the letter dated June 19, 1929, written by the Finance Corporation of America to the Auburn-Kansas Distributing Company? A. Yes.

"5. Did the Auburn-Kansas Distributing Company repossess the car in question from Mr. Keevan? A. Yes.

"6. If you find that the said company did repossess the car from Mr. Keevan, did they repossess it under the letter dated June 19, 1929, written by the Finance Corporation of America to the Auburn-Kansas Distributing Company? A. Yes."

Plaintiff appeals with ten assignments of error, which it does not attempt to follow in its argument. It complains of an instruction given to the jury which reads:

"X. The court further instructs you that under the letter of June 19, 1929, herein set forth, in the event the purchaser failed to pay the note, the Finance Corporation of America would look directly to the Auburn-Kansas Distribut-

ing Company for payment of the note and gave the Auburn-Kansas Distributing Company authority to take such action at its expense to repossess the car in question as the Auburn-Kansas Distributing Company might consider necessary.

"If, therefore, you find that in pursuance of this letter from the Finance Corporation of America to the Auburn-Kansas Distributing Company, the Auburn-Kansas Distributing Company repossessed the car in question and sold it to the defendant, W. H. Walpole, then you are instructed that such sale transferred all of the interest both of the vendor, Ross Conklin, and the vendee, the Finance Corporation of America, to W. H. Walpole, and your verdict should be for the defendant, Walpole."

According to plaintiff's view, this instruction was faulty in several respects—that it did not say whether the repossession should be from Conklin, Goheen or Keevan; that the letter could not have referred to Goheen or Keevan because plaintiff knew nothing of those successive purchasers of the automobile; that it could not have referred to repossession of the car from Conklin because it had been repossessed from him nine days before the letter was written. This sophistical sort of argument is pressed at length. It seems a sufficient answer to say that plaintiff had no concern about that phase of the matter. What it was emphasizing was that the Wichita dealer would have to be responsible for the payment of the note if the maker did not pay. "We will look directly to you for full payment," it said. While assuring the dealer of the coöperating services of its collection department, "it must be understood," said the plaintiff, "that any repossession action which you [the dealer and not the plaintiff] may consider necessary must be taken at your direction and expense." This was either a disavowal of all rights which the dealer had sought to confer upon plaintiff by the assignment and by the transmission of the note and conditional sales contract which accompanied the draft honored by plaintiff on June 19, 1929, or it was an authorization to the dealer to take whatever action might be necessary to repossess the automobile if payments were not forthcoming. Plaintiff was not in the least concerned about who the purchaser might be. "Whoever he is—Conklin, Goheen, Keevan, or the man in the moon—if he doesn't pay, it is up to you, Mr. Dealer, to repossess yourself of the car"—such is the fair import of plaintiff's letter of June 19.

Since plaintiff thus put the responsibility upon the dealer to repossess the car from whomsoever might be the purchaser, the fact that it was repeatedly sold and repeatedly repossessed before it be-

came the subject of a sale and exchange between the dealer and the appellee takes nothing from the right and privilege of the dealer after repossessing it to give good title to the car to the defendant Walpole.

It is argued that the assignment of blank date, agreed to have been made on June 19, 1929, must have been recorded, since it was on the reverse side of the conditional sales contract which was recorded on June 10, 1929. That conclusion does not necessarily follow, but the court holds that the acknowledged right and power of the dealer to repossess the automobile as indicated by plaintiff's letter of June 19 renders the question of the recording of the assignment of no importance.

The other arguments urged against the judgment have been carefully noted, but they need no discussion. Before concluding, however, the writer of this opinion desires to give his personal view that the return of the automobile by Conklin on his employer's request was a repossession of the automobile in accordance with the terms of the conditional sales contract he had just executed, and that the lien was thereby discharged before the conditional sales contract was either recorded or assigned. The corollary of that view is that the dealer merely palmed off a bogus conditional sales contract on the plaintiff, but that is no concern of this appellee.

The judgment is affirmed.